UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------

**CV 03    1489**

JORGE (GEORGE) RUIZ,

    Plaintiff,

    -against-

MAAN SALUJA, BAGNATO REALTY
SERVICES, LLC, NAI LONG ISLAND INC.,
TIMOTHY STAPLETON, PARK AVENUE
BEACH ASSOCIATES, SATNAM SARNA,
and RAJINDER S. UPPAL,

    Defendants.
------------------------------------------------------X

COMPLAINT AND
JURY DEMAND

WEXLER, J.

BOYLE, M.J.

## PRELIMINARY STATEMENT

This is an action to obtain unpaid minimum wages, overtime wages, and other compensation owed to Jorge Ruiz from Maan Saluja, Bagnato Realty Services, LLC, NAI Long Island Inc., Timothy Stapleton, Park Avenue Beach Associates, Satnam Sarna, and Rajinder S. Uppal, in accordance with federal and state law.

Mr. Ruiz is a 70 year-old man who worked for Defendants at 20 West Park Avenue in Long Beach, New York for over 15 years as a superintendent, maintenance worker, janitor, and repairman. To complete his varied responsibilities in the building, Mr. Ruiz worked long hours, frequently totaling 117 hours per week. Throughout his employment, Mr. Ruiz was paid only a fraction of the amount required by federal and state law.

When Mr. Ruiz repeatedly inquired about his unpaid wages, Defendants promised Mr. Ruiz that his pay would be forthcoming, thereby inducing him to remain working at 20 West Park Avenue. Eventually, in response to his complaints, defendants terminated him on or around December 2000. Mr. Ruiz now comes forward to claim his rights as a worker.

## JURISDICTION AND VENUE

1. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this action occurred within this district, and Defendants are located, reside, or do business in this district.

## PARTIES

3. Plaintiff Jorge Ruiz ("Plaintiff" or "Mr. Ruiz") was a building services worker at 20 West Park Avenue, Long Beach, New York 11561 ("20 West Park Avenue" or "the Building") from approximately 1985 until approximately December 2000.

4. At all times relevant to this action, Mr. Ruiz was an employee of the Defendants within the meaning of the Fair Labor Standards Act and New York Labor Law.

<u>Defendant Managers</u>

5. John B. Swift Management Company was a real estate and management company that performed management services for 20 West Park Avenue from approximately February 1986 until approximately December 1997.

6. Defendant Timothy Stapleton ("Stapleton") was a senior property manager at John B. Swift Management Company.

7. From approximately February 1986 until approximately December 1997, Defendant Stapleton performed building management services for John B. Swift Management

2

Company at the Building, including supervising and directing Mr. Ruiz in the performance of his duties.

8. John B. Swift Management Company was located at 100 East Old Country Road, Suite 11, Mineola, New York 11501.

9. On or around December 1997, Defendant Bagnato Realty Services, LLC ("Bagnato Realty") acquired John B. Swift Management Company.

10. Defendant Bagnato Realty is a real estate and management company that performed management services for 20 West Park Avenue from approximately December 1997 until approximately November 2000.

11. Following Defendant Bagnato Realty's acquisition of John B. Swift Management Company, Defendant Stapleton became a senior property manager for Defendant Bagnato Realty.

12. From approximately December 1997 to approximately November 2000, Defendant Stapleton performed building management services for Defendant Bagnato Realty at the Building, including supervising and directing Mr. Ruiz in the performance of his duties.

13. Defendant Bagnato Realty was located at One Expressway Plaza, Roslyn Heights, New York 11577.

14. Upon information and belief, Defendant Bagnato Realty was a business or enterprise engaged in interstate commerce whose annual business done exceeds $500,000.

15. At all times relevant to this action, Defendant Bagnato Realty employed Mr. Ruiz who handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.

16. In November 2000, Defendant Bagnato Realty changed its name to NAI Long Island Inc. and now operates as NAI Long Island Inc.

17. Defendant NAI Long Island Inc. ("NAI") has continued Defendant Bagnato Realty's business as a commercial real estate and management company.

18. Defendant NAI retains the same location as Defendant Bagnato Realty at One Expressway Plaza, Suite 212, Roslyn Heights, New York 11577.

19. Defendant NAI performed management services for the Building from approximately November 2000 until the termination of Mr. Ruiz's employment.

20. Following Defendant Bagnato Realty's name change to NAI, Defendant Stapleton continued as a senior property manager at Defendant NAI. Defendant Stapleton performed management services for the Building, including supervising and directing Mr. Ruiz in the performance of his duties.

21. From approximately February 1986 to the termination of Mr. Ruiz's employment, Defendant Stapleton, as a representative of Defendants John B. Swift Management Company, Bagnato Realty, and NAI, monitored the maintenance of the building and collected rent from tenants.

22. At all relevant times, Defendant Stapleton had power and control over hiring, firing, rates and methods of payment, work schedules, maintenance of employment records, and terms and conditions of employment relating to Mr. Ruiz.

23. Defendant Bagnato Realty is a successor to John B. Swift Management Company.

24. Defendant NAI is a successor to Defendant Bagnato Realty.

25. At all times relevant to this action, Defendants Bagnato Realty, NAI, and Stapleton were Mr. Ruiz's employer within the meaning of the Fair Labor Standards Act and New York

Labor Law. Defendants Bagnato Realty, NAI and Stapleton are hereafter referred to as "Defendant Managers."

Defendant Owners

26. Defendant Park Avenue Beach Associates ("PABA") is a business partnership that was formed on or about May 12, 1985. Defendant PABA is located at 11 Grace Avenue, Suite 102, Great Neck, New York 11021.

27. Defendant PABA owned 20 West Park Avenue from on or about May 16, 1985 until on or about January 31, 2002.

28. Upon information and belief, Defendant PABA is a business or enterprise engaged in interstate commerce whose annual business done exceeds $500,000.

29. At all times relevant to this action, Defendant PABA employed Mr. Ruiz who handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.

30. Defendant Maan Saluja ("Saluja"), as a partner in Defendant PABA, worked with Defendant Management companies to maintain the investment value of the building. Defendant Saluja had control over the business operations and financial affairs of the partnership.

31. Throughout the course of Mr. Ruiz's employment at the Building, Defendant Saluja would assign tasks to Mr. Ruiz, either directly or through Defendant Stapleton.

32. At all relevant times, Defendant Saluja had power and control over hiring, firing, rates and methods of payment, work schedules, maintenance of employment records, and terms and conditions of employment relating to Mr. Ruiz.

33. Defendant Satnam Sarna ("Sarna"), as a partner in Defendant PABA, had control over the business operations and investments of the partnership.

34. Defendant Sarna brought a Petition to Recover Possession of Real Property to evict Mr. Ruiz from his home in the building, effectively terminating Mr. Ruiz's employment, in December 2000.

35. As a general partner with control over business opportunities and investments, Defendant Sarna had power and control over hiring, firing, rates and methods of payment, work schedules, maintenance of employment records, and terms and conditions of employment relating to Mr. Ruiz.

36. Defendant Rajinder S. Uppal ("Uppal"), as a general partner in Defendant PABA, had control over the business operations and investments of the partnership.

37. As general partner with control over business opportunities and investments, Defendant Uppal had power and control over hiring, firing, rates and methods of payment, work schedules, maintenance of employment records, and terms and conditions of employment relating to Mr. Ruiz.

38. At all times relevant to this action, Defendants PABA, Saluja, Sarna and Uppal were Mr. Ruiz's employer within the meaning of the Fair Labor Standards Act and New York Labor Law. Defendants PABA, Saluja, Sarna, and Uppal are hereafter referred to as "Defendant Owners."

39. Upon information and belief, Defendant Owners and Defendant Managers were joint employers of Mr. Ruiz, who worked for them both. Defendant Managers acted in the interest of Defendant Owners in relation to Mr. Ruiz.

40. By virtue of their relationship, Defendant Owners and Defendant Managers are joint employers engaged in interstate commerce whose annual business done exceeds $500,000.

## STATEMENT OF FACTS

41. 20 West Park Avenue is a two-story commercial building with approximately 28 tenants.

42. Mr. Ruiz performed maintenance and janitorial services in the Building for the Defendants, the owners and managers of the Building.

43. Mr. Ruiz began working at the Building for the Defendants on or around May 1985. Mr. Ruiz remained working in the Building until on or around December 2000.

44. At the beginning of his employment, Mr. Ruiz discussed the terms of his employment with Defendant Stapleton and Defendant Saluja, who stated that Mr. Ruiz would be paid $800 per month, with provisions for sick days and vacations, as well as medical benefits.

45. Defendant Stapleton and Defendant Saluja also stated that Mr. Ruiz would receive a yearly bonus.

46. In performing maintenance and janitorial services for the Building, Mr. Ruiz was responsible for cleaning and maintaining common spaces of the Building as well as performing specific maintenance and janitorial duties within the offices of the tenants.

47. Mr. Ruiz's duties in the common spaces of the Building included but were not limited to: vacuuming; cleaning carpets; painting surfaces; changing lightbulbs; removing trash; and maintaining and repairing the electrical, plumbing, heating, and air conditioning systems.

48. Mr. Ruiz was required to clean the bathrooms in the Building twice a day. In the course of this cleaning, Mr. Ruiz also replaced toilet paper, paper towels, soap, and other supplies.

49. Mr. Ruiz's duties in the tenants' offices included: collecting and removing trash every day and vacuuming the offices on the weekends.

50. Mr. Ruiz's regular duties also included responding to complaints made by tenants. In the course of responding to these complaints, Mr. Ruiz made necessary repairs, including fixing electrical systems and repairing pipes.

51. On at least one occasion, Defendant Saluja instructed Mr. Ruiz that his responsibilities included responding to complaints made by tenants and that, if he did not respond to complaints, Mr. Ruiz would be terminated.

52. During the winters, Mr. Ruiz shoveled, salted, and cleaned the Building's parking lot. The Defendants did employ a snow removal service for a certain period of time but, at some point, the snow removal service ceased. When this service ceased, the Defendants relied on Mr. Ruiz to clean the lot by hand.

53. Mr. Ruiz painted the exterior of the Building approximately once a year at the instruction of Defendant Stapleton.

54. When individuals inquired about renting space in the Building, Mr. Ruiz provided information and directed the individuals to contact the Defendants.

55. Mr. Ruiz routinely closed the main entrance to the Building at 7 P.M. Between 7 P.M. and approximately 10 P.M., Mr. Ruiz remained on-duty to monitor the entry and exit of tenants or guests.

56. Beyond his regular duties, Defendants required Mr. Ruiz to respond to extraordinary circumstances, including natural disasters such as hurricanes.

57. On at least on occasion, in response to the direction of Defendant Saluja and Defendant Stapleton, Mr. Ruiz repaired extensive water and roof damage to the Building. These repairs included removing all of the damaged carpets from the Building.

58. Defendant Saluja promised Mr. Ruiz a bonus for this extra work. Mr. Ruiz did not receive this bonus.

59. On multiple occasions, Mr. Ruiz did not receive the supplies he needed to perform his duties from the Defendants.

60. To carry out his responsibilities, Mr. Ruiz purchased supplies using his personal funds.

61. In response to Mr. Ruiz's inquiries about reimbursement, the Defendants, on at least one occasion, instructed Mr. Ruiz to submit his receipts to them for payment. Although Mr. Ruiz submitted various receipts in accordance with these instructions, the Defendants did not reimburse Mr. Ruiz for these expenses.

62. In 1996 or 1997, after several incidents of vandalism at the Building, Defendants asked Mr. Ruiz to move into an office in the Building and be a full-time presence in order to deter future crime against the Building.

63. Mr. Ruiz paid Defendants $200 a month to live in Office 101, a small office in the Building.

64. Upon information and belief, before Mr. Ruiz lived in Office 101, the Defendants charged commercial tenants approximately $150 a month to rent this space.

65. Mr. Ruiz lived with his companion, Elena Ramos, in Office 101. The office had neither a kitchen nor a bathroom. Mr. Ruiz and Ms. Ramos used a bathroom in the basement and cooked using a microwave.

66. In 1998, while working at the Building for the Defendants, Mr. Ruiz suffered a heart attack. He was hospitalized for approximately four weeks. During that period, Ms. Ramos, generally, performed Mr. Ruiz's responsibilities at the Building under his direction from the hospital. After being released from the hospital, Mr. Ruiz resumed his duties at the Building.

67. Mr. Ruiz worked from approximately 5 A.M. in the morning until approximately 10 P.M. at night. In general, Mr. Ruiz worked seven days a week, including holidays, to perform all of the duties required by the Defendants.

68. Mr. Ruiz was allowed to take only a two hour break on Sundays, when he attended church.

69. Mr. Ruiz, on average, worked 117 hours per week.

70. Defendants knew that Mr. Ruiz worked these long hours. On at least one occasion, Defendants contacted Mr. Ruiz in the early morning or late evening hours with work assignments to be done immediately.

71. Beginning in 1995, Defendants required Mr. Ruiz to carry a pager.

72. Defendants paged Mr. Ruiz with tasks at all hours. Defendants also instructed tenants to page Mr. Ruiz with complaints.

73. In response to these pages, Mr. Ruiz would call Defendant Saluja, Defendant Saluja's secretary, Defendant Stapleton, or Defendant Stapleton's secretary for further direction.

74. On about five occasions, Mr. Ruiz remained on-duty through the night for multiple days in a row, when tenants required building services beyond Mr. Ruiz's workday.

75. Defendant Saluja informed Mr. Ruiz that since he was responsible for the whole Building, he was responsible for working these evenings.

76. During the period of employment, the Defendants paid Mr. Ruiz less than the applicable state and federal minimum wage.

77. Although Mr. Ruiz routinely worked far beyond a 40-hour week, the Defendants did not pay him for his overtime hours.

78. The Defendants paid Mr. Ruiz sporadically, often several weeks or months after the period for which Mr. Ruiz had worked.

79. On multiple occasions, Mr. Ruiz confronted Defendants, including Defendant Saluja, regarding the lack of payment of wages. In response, Defendant Saluja promised to pay the wages and, on at least one occasion, blamed his accountant for the failure.

80. Despite promises by the Defendants to pay his owed wages, Mr. Ruiz was consistently owed back wages throughout his employment.

81. During multiple years, Mr. Ruiz received payments for back wages but not for the more recent periods for which he had worked.

82. Mr. Ruiz's employment with the Defendants ended when he was evicted from Office 101 on or around December 2000.

## FIRST CLAIM FOR RELIEF
## FEDERAL MINIMUM WAGE

83. Mr. Ruiz realleges and incorporates by reference paragraphs 1 through 82 above.

84. Defendants willfully failed to pay Mr. Ruiz the minimum wage, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.

85. Mr. Ruiz is entitled to an award of damages for unpaid minimum wages, plus interest, and liquidated damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
## FEDERAL OVERTIME VIOLATIONS

86. Mr. Ruiz realleges and incorporates by reference paragraphs 1 through 85 above.

87. Defendants willfully failed to pay Mr. Ruiz the federal overtime premium of one-and-one half times the regular rate of pay for each hour worked in excess of 40 hours per week in violation of the Fair Labor Standards Act overtime provision, 29 U.S.C. §207(a)(1).

88. Mr. Ruiz is entitled to an award of damages for unpaid overtime premiums, plus interest, and liquidated damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
## NEW YORK STATE MINIMUM WAGE

89. Mr. Ruiz realleges and incorporates by reference paragraphs 1 through 88 above.

90. Defendants failed to pay Mr. Ruiz the New York State minimum wage in violation of New York Labor Law §§ 190 et seq. and §§ 650 et seq. Mr. Ruiz is entitled to an award of damages for unpaid minimum wages, plus interest, in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## NEW YORK STATE OVERTIME VIOLATIONS

91. Mr. Ruiz realleges and incorporates by reference paragraphs 1 through 90 above.

92. Defendants failed to pay Mr. Ruiz overtime premiums for all hours worked in excess of 44 hours per week in violation of New York Labor Law §§ 190 et seq. and §§ 650 et seq. and supporting regulations and orders of the New York State Department of Labor.

93. Mr. Ruiz is entitled to an award of damages for unpaid overtime premiums, plus interest, in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## NEW YORK STATE LIQUIDATED DAMAGES

94. Mr. Ruiz realleges and incorporates by reference paragraphs 1 through 93 above.

95. Defendants willfully violated New York Labor Law §§ 190 et seq. and §§ 650 et seq. and supporting regulations and orders of the New York State Department of Labor in failing to pay Mr. Ruiz the minimum wage and overtime premiums for all hours worked in excess of forty hours per week.

96. Mr. Ruiz is entitled to an award of damages equal to twenty-five percent of the unpaid wages and overtime premiums, in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

97. Mr. Ruiz realleges and incorporates by reference paragraphs 1 through 96 above.

98. By their actions stated above, Defendants were unjustly enriched by services performed and actions undertaken by Mr. Ruiz.

99. The circumstances between Mr. Ruiz and Defendants are such that equity and good conscience require Defendants to make restitution.

100. Mr. Ruiz is entitled to compensatory damages, in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
## QUANTUM MERUIT

101. Mr. Ruiz realleges and incorporates by reference paragraphs 1 through 100 above.

102. By their actions stated above, Defendants wrongfully failed to pay Mr. Ruiz the reasonable value of services Mr. Ruiz performed for the Defendants.

103. Mr. Ruiz is entitled to compensatory damages, in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
## FRAUDULENT INDUCEMENT

104. Mr. Ruiz realleges and incorporates by reference paragraphs 1 through 103 above.

105. By their actions, stated above, Defendants falsely and fraudulently, and with intent to deceive and defraud, induced Mr. Ruiz to continue working despite underpayment and nonpayment of his wages.

106. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Mr. Ruiz, from an improper and evil motive amounting to malice and in conscious disregard of Mr. Ruiz's rights.

107. As a proximate result of this conduct, Mr. Ruiz suffered and continues to suffer economic losses.

108. Mr. Ruiz is entitled to compensatory and punitive damages, in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF
## BREACH OF CONTRACT

109. Mr. Ruiz realleges and incorporates by reference paragraphs 1 through 108.

110. The Defendants entered into an oral employment contract with Mr. Ruiz.

111. By his actions stated above, Mr. Ruiz adequately performed his obligations under the employment contract.

112. By their actions stated above, Defendants breached the employment contract with Mr. Ruiz by failing to comply with the promised terms and conditions of employment.

113. Mr. Ruiz is entitled to compensatory damages in an amount to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a) Award compensatory damages to Plaintiff for unpaid minimum wages pursuant to 29 U.S.C. § 201 et seq. and New York Labor Law §§ 190 et seq. and §§ 650 et seq., in an amount to be determined at trial;

b) Award compensatory damages to Plaintiff for unpaid overtime premiums pursuant to 29 U.S.C. § 201 et seq. and New York Labor Law §§ 190 et seq. and §§ 650 et seq., in an amount to be determined at trial;

c) Award liquidated damages and interest to Plaintiff pursuant to 29 U.S.C. § 216(b) and New York Labor Law § 663, in an amount to be determined at trial;

d) Award compensatory damages to Plaintiff for violations of state common law regarding unjust enrichment and quantum meruit, in an amount to be determined at trial;

e) Award compensatory and punitive damages to Plaintiff for violation of state common law regarding fraudulent inducement, in an amount to be determined at trial;

f) Award the Plaintiff compensatory damages resulting from Defendants' breach of contract;

g) Award attorneys' fees and costs to Plaintiff pursuant to 29 U.S.C. § 216(b) and New York Labor Law § 663; and

h)   Grant such additional and further relief as the Court deems just and proper.

Dated:   March 27, 2003
         New York, New York

                    Respectfully submitted,

                    By: /s/
                    WASHINGTON SQUARE LEGAL SERVICES, INC.
                    Katharine Knaus, Legal Intern (KK 8075)
                    Maya Nath, Legal Intern (MN 4989)
                    Michael J. Wishnie, Esq. (MW 1952)
                    161 Avenue of the Americas, 4th Floor
                    New York, NY 10013
                    (212) 998-6430


                    Attorneys for the Plaintiff